**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MY-CHAU NGUYEN,

           Petitioner/Movant,

    v.

FRAUNHOFER-GESELLSCHAFT ZUR
FÖRDERUNG DER ANGEWANDTEN
FORSCHUNG E.V,

           Respondent.

Miscellaneous Action No. 21-0014 (CKK)

**MEMORANDUM OPINION AND ORDER**
(December 7, 2021)

This matter comes before the Court on Petitioner's My-Chau Nguyen's [1] Motion to

Quash Subpoena to Non-Party My-Chau Nguyen and for a Protective Order and Respondent

Fraunhofer Gesellschaft Zur Fodering der angewandten Forschung E.V. ("Fraunhofer")'s [13]

Cross-Motion to Compel Compliance with Subpoena.  Petitioner requests an order quashing a

subpoena issued by Fraunhofer in a pending lawsuit in the United States District Court for the

District of Delaware, *Fraunhofer Gesellschaft Zur Fodering der angewandten Forschung E.V. v.

Sirius XM Radio, Inc.*, No. 1:17-cv-00184 ("Underlying Action").  Fraunhofer cross-moves for

an order compelling Petitioner's deposition testimony and sanctions against Petitioner for

refusing to testify.  Fraunhofer argues that (1) the instant Motion is untimely and, in the

alternative, (2) Petitioner has not established that complying with the subpoena would cause her

"undue burden."  Fraunhofer further argues that the instant Motion is so devoid of legal authority

that the Court should enter sanctions against Petitioner.  Upon consideration of the briefing,[1] the

---

[1]  This Memorandum Opinion and Order focuses on the following documents:
- Petitioner's Brief in Support of Motion to Quash Subpoena Subpoena to Non-Party My-Chau Nguyen and for a Protective Order ("Pet'r's Mot."), ECF No. 1;

relevant legal authorities, and the record as a whole, the Court shall **DENY** Petitioner's [1] Motion to Quash, **GRANT IN PART** Fraunhofer's [13] Cross-Motion insofar as to compliance with the subpoena, and **HOLD IN ABEYANCE IN PART** Fraunhofer's [13] Cross-Motion as to sanctions.

## I.      BACKGROUND

This miscellaneous action relates to a subpoena issued by Fraunhofer against Petitioner in the Underlying Action, who was Defendant Sirius XM Radio Inc.'s ("Sirius") Senior Vice President of Sales and Marketing from June 2012 to April 2020.   Fraunhofer alleges in the Underlying Action, pending since 2017, that Sirius products that Sirius marketed to the public infringed on four of Fraunhofer's patents.  Pl.'s Cross-Mot. at 2.  On May 26, 2017, Sirius listed Petitioner as a "person having knowledge of facts relevant to the claim or defense of any party" in the Underlying Action.  *Id.*, Ex. 1 at 4 (capitalization altered); Pet'r's Mot. at 4.  To that end, Fraunhofer noticed a deposition of Petitioner on September 18, 2020.  *Id.*, Ex. 5.  Before responding to that notice, Sirius filed amended initial disclosures on September 25, 2020, removing Petitioner.  *Id.*, Ex. 4.  On October 2, 2020, counsel for Sirius (and, subsequently, Petitioner) informed counsel for Fraunhofer via email that, because Petitioner had retired from Sirius six months prior, Sirius would not make her available for a deposition.  *Id.*, Ex. 5 at 2. Rather, Sirius only made Denise Karkos, Petitioner's replacement, available for a deposition.  *Id.*

As a result, Fraunhofer personally served Petitioner on October 26, 2020, with a third-party subpoena for deposition testimony.  *Id.*, Ex. 7.  The parties disagree over what happened

---

- Fraunhofer's Cross-Motion to Compel Compliance with Subpeona or, in the Alternative, Transfer to the District of Delaware ("Pl.'s Cross-Mot."), ECF No. 13;
- Petitioner's Reply Brief in Support of Motion to Quash Subpoena to Non-Party My-Chau Nguyen and for a Protective Order ("Pet'r's Repl."), ECF No. 15; and
- Fraunhofer's Reply in Support of Plaintiff's Cross-Motion to Compel Compliance with Subpoena or, in the Alternative, Transfer to the District of Delaware ("Pl.'s Repl."), ECF No. 24.

next.  Fraunhofer insists that counsel for Petitioner (and Sirius) refused to schedule a date for

testimony and refused to meet and confer in good faith until the filing of Petitioner's Motion to

Quash.  *See* Pl.'s Mot. at 4-7.  Petitioner, on the other hand, insists *Fraunhofer* refused to meet

and confer, despite serving objections to the subpoena.  Pet'r's Mot. at 6-7.

The subpoena at issue commanded Petitioner to be deposed in person in the District of

Columbia on November 4, 2020.[2]  Pl.'s Mot, Ex. 9 at 1.  On October 28, 2020, Sirius reiterated

that it represented Petitioner in connection with the subpoena and noted that it intended to "serve

objections."  Pet'r's Mot., Ex. 10 at 1.  On October 30, 2020, Sirius instead proposed that

Petitioner be deposed December 11, 2021.  Pet'r's Mot., Ex. 9 at 2.  Sirius further stated that the

date was "subject to the same reservation of rights, objections[,] and future changes including

Sirius['] [] continued request for an explanation from Fraunhofer for its request for depositions

of individuals not identified on Sirius XM's Initial Disclosures."  *Id.* at 1.  The Court assumes

that the email meant Sirius' September 20, 2020, Initial Disclosures, as Petitioner *was* listed on

Sirius' original Initial Disclosures.  Fraunhofer agreed to the date and amended the subpoena to

provide for a December 11, 2020 date.  Pl.'s Mot, Ex. 11.  Sirius further insisted that Fraunhofer

explain why it wished to depose Petitioner and, absent an explanation, would not make Petitioner

available to comply with the subpoena.  Pet'r's Mot, Ex. 12 at 1.  Fraunhofer simply repeated

that it believed Petitioner was in possession of relevant information to the case because Sirius

had already stated as much.  *See id.*, Ex. 13 at 1.

On December 4, 2020, Sirius served Fraunhofer with objections.  *Id.*, Ex. 19.  Petitioner

objected to the subpoena on the grounds that, in relevant part:  (1) she did not, in fact, possess

any relevant information and, presumably in the alternative, (2) she *did* possess relevant

---

[2]  It also demanded the production of documents, but Fraunhofer now seeks Petitioner's deposition testimony only.

information, but that it would be unduly burdensome to provide that relevant information as

Fraunhofer could obtain or had obtained it from other sources. *Id.* at ¶¶ 9-11.  On December 22,

2020, the parties filed a joint motion seeking resolution from the court in the Underlying Action.

Pl.'s Mot., Ex. 15.  The court scheduling a telephone conference, during which Sirius argued that

the court in the Underlying Action lacked jurisdiction to enforce the subpoena.  *Id.*, Ex. 18 at 51-

52.  After further back-and-forth between the parties, Petitioner filed the instant Motion to Quash

in this Court on February 19, 2021.  Fraunhofer filed its Cross-Motion to Compel on March 5,

2021.  With the motions fully briefed, the Court turns to their resolution.

      **II.**      **DISCUSSION**

      **A. <u>Petitioner Must Testify</u>**

Fraunhofer argues that the Court should deny the Motion to Quash on procedural and

substantive grounds.  First, Fraunhofer insists that that Petitioner's Motion to Quash is not

"timely" within the meaning Fed. R. Civ. P. 45(d)(3).  Second, Fraunhofer argues that Petitioner

has not established that a one-day Zoom deposition would be unduly burdensome.  The Court

agrees on both counts.

      1.  <u>Timeliness</u>

Rule 45 requires a motion to quash a subpoena be filed in a "timely" manner.  Fed. R.

Civ. P. 45(d)(3).  In general, timeliness depends on the totality of the circumstances, though this

Court has adopted a number of rules of thumb.  *HT S.R.L. v. Velasco*, No. 15-664, 2015 WL

13759884, at *6 (D.D.C. Nov. 13, 2015) (RBW).  For example, a motion to quash will generally

be untimely if not filed "within the time set in the subpoena for compliance."  *U.S. ex rel. Progue*

*v. Diabetes Treatment Centers of Am., Inc.*, 238 F. Supp. 2d 270, 278 (D.D.C. 2002) (RCL).  A

number of courts have concluded that a motion to quash filed after the noticed date are generally

untimely.  *See Velasco*, 2015 WL 13759884, at \*5 (collecting cases). [3]

Petitioner relies primarily on two cases for the proposition that the Court should not apply

so strict a rule:  *In re Goodyear Tire & Rubber Co. Sec. Litig.*, No. 1:89-0894X, 1991 WL

172930 (N.D. Ohio June 21, 1991) and *Celanese Corp. v. E.I. duPont de Nemours & Co.*, 58

F.R.D. 606 (D. Del. 1973).  The court in *Goodyear*, citing no law, suggested that a motion to

quash should be subject to a lengthier deadline when "the course of conduct between the

[parties] [has] been one of cooperation, rather than contention."  1991 WL 172930, at \*1.  The

court reasoned that, where the parties have previously been cooperating, the "strict

interpretation" that this Court has generally followed "would discourage informal dispute

resolution" by suggesting that they must immediately resort to a court's intervention.  *Id.*

Similarly, the court in *Celanese* reasoned (almost fifty years ago) that it should not impose a

stricter deadline when the deponent "reasonably expected that it would be afforded with an

opportunity to participate informally in working out [the] document request" in the subpoena.  58

F.R.D. at 609.  The Court need not decide here which approach to apply, because the Motion to

Quash is untimely under both approaches.

First, under the stricter approach, Petitioner's Motion to Quash is undeniably untimely.

Fraunhofer rescheduled the date of compliance to December 11, 2020, and the Motion to Quash

was filed on February 19, 2021.  Second, the circumstances here are not akin to those identified

in *Goodyear* and *Celanese*.  Petitioner spends much of her briefing accusing Fraunhofer of *never*

cooperating, and Petitioner could not have reasonably expected that informal resolution would be

---

[3] *See also, e.g.*, *Allstate Ins. Co. v. Nassiri*, No. 08-CV-369-JCM, 2011 WL 4905639, at \*1 (D. Nev. Oct. 14, 2011);
*City of St. Petersburg v. Total Containment, Inc.*, No. 06-CV-20953, 2008 WL 1995298, at \*2 (E.D. Pa. May 5,
2008); *Innomede Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002).

forthcoming in the face of what it saw as such intransigence.  On these facts, the Court is not

inclined to create a new definition of timeliness under Rule 45.

2.  Merits

"The quashing of a subpoena is an extraordinary measure, and is usually inappropriate

absent extraordinary circumstances." *Id.* at 25.  A party "may obtain discovery regarding any

nonprivileged matter that is relevant to any party's claim or defense . . . or which appears

reasonably calculated to lead to the discovery of admissible evidence." *Dep't of the Treasury v.

Pension Benefit Guar. Corp.*, 301 F.rd 20, 25 (D.D.C. 2014) (cleaned up).  "'Moreover, the

general policy favoring broad discovery is particularly applicable where, as here, the court

making the relevance determination has jurisdiction only over the discovery dispute, and hence

has less familiarity with the intricacies of the government substantive law than does the court

overseeing the underlying litigation.'" *Id.* (quoting *Jewish War Veterans of the United States of

Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007).  Depositions in particular "'rank high

in the hierarchy of pre-trial, truth-finding mechanisms.'" *Id.* at 30 (quoting *Founding Church of

Scientology v. Webster*, 802 F.2d 1448, 1451 (D.C. Cir. 1986).

A party may limit discovery, including precluding the deposition altogether, upon a

showing that it would be irrelevant, "unreasonably cumulative or duplicative," or cause "undue

burden or expense." *Flanagan v. Wyndham Intern. Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005)

(RCL).  It is the moving party's burden to show that the subpoena is irrelevant, duplicative, or

oppressive. *See Linder v. Dep't of Def.*, 133 F.3d 17, 24 (D.C. Cir. 1998).  To determine whether

a subpoena for deposition testimony is unduly burdensome, "courts generally employ a

balancing test, weighing the burdensomeness to the moving party against the deponent's need

for, and the relevance of, the information being sought." *Flanagan*, 231 F.R.D. at 102.

The parties agree that Petitioner has relevant information that could be elicited in a deposition. As such, Petitioner can only seek to quash the subpoena on the grounds that it would be unreasonably cumulative and that it would be unduly burdensome. As to cumulativeness, Petitioner spends much of her briefing arguing that it would be "unfair" to subject her to a one-day, Zoom deposition when, Petitioner alleges, she would offer no "unique" testimony that was not already available to Fraunhofer via the deposition of Petitioner's replacement at Sirius, Denise Karkos. Pl.'s Mot. at 18. Taking, for the moment, Petitioner's assertion as true, Petitioner offers no cases to stand for the proposition that a subpoena for *deposition testimony* may be quashed on cumulativeness grounds if the testimony will substantially overlap. *See* Pl.'s Mot. at 19; *Wyoming v. U.S. Dept. of Agric.*, 208 F.R.D. 449, 454 (D.D.C. 2002) ("all relevant *documents* . . . would be in the hands of the . . . defendants").

This makes sense, as depositions play an important role in allowing a party to "ask probative follow-up questions" about information it has already received through discovery. *See Pension Benefit*, 301 F.R.D. at 30. In fact, a "professed lack of knowledge typically does not constitute good cause and is insufficient to warrant the quashing of a deposition." *Alexander v. FBI*, 186 F.R.D. 60, 64 (D.D.C. 1998). It stands to reason that a professed lack of *unique* knowledge should also be insufficient to quash a subpoena for deposition testimony. *See Darling v. Girard*, No. 15-mc-499, 2015 WL 13898434, at *7 (D.D.C. July 20, 2015) (BAH). The subpoenaing party "'should be permitted to attest h[er] assert lack of knowledge and to question [her] on matters directly related to this case.'" *Id.* (quoting *Alexander*, 186 F.R.D. at 65).

In any event, the Court is not inclined to believe that Petitioner could not have *any* unique knowledge in this case. The parties agree that Ms. Karkos assumed Ms. Nguyen's role only

recently.   Pl.'s Cross-Mot. at 10.   Moreover, the parties agree that it was Petitioner, not Ms.

Karkos, who was intimately involved in the marketing of the allegedly infringing products

during the time Fraunhofer alleges trademark infringement.   *Id.*   It seems much more likely that

Petitioner may have unique knowledge of the alleged infringement that she observed during her

time at Sirius—knowledge that Ms. Karkos could not have.  Pl.'s Cross-Mot. at 11.  As such, the

Court concludes Petitioner has failed to carry her burden to show that her deposition testimony

would not be unnecessarily cumulative.

      Nor would her testimony constitute an "undue burden."  The only burden Petitioner

alleges here is the mere attendance of a one-day deposition, from her home, via Zoom.  *Id.* at 12.

Beyond that, she has "failed to present any evidence . . . of harm she will suffer by submitting to

. . . the proposed deposition."  *See Flanagan*, 231 F.R.D. at 105.  Petitioner notes vaguely that it

would be burdensome to subject her to a deposition because she is "retired."  Yet, as Fraunhofer

notes, retirement affords Petitioner *more* time to sit for deposition testimony than her former

colleagues who remain working at Sirius.  As such, the Court concludes that Petitioner has also

failed to carry her burden to show that her deposition testimony would cause her an undue

burden.

      **B.  <u>Sanctions</u>**

      Pursuant to Fed. R. Civ. P. 45, the Court may "hold in contempt a person who, having

been served, fails without adequate excuse to obey the subpoena or an order related to it."  Fed.

R. Civ. P. 45(g).  Although the circumstances that can constitute "adequate excuse" are varied,

noncompliance contrary to established law cannot offer any "adequate excuse."  *See Shvartser v.*

*Lekser*, 292 F. Supp. 3d. 272, 275 (D.D.C. 2018).  As explained above, Petitioner has offered no

case standing for the proposition that alleged cumulativeness is sufficient basis to quash a

subpoena for deposition testimony.  This Court has effectively held the direct opposite.  *See Alexander*, 186 F.R.D. at 64.  Similarly, Petitioner's failure to "articulate specific facts" demonstrating how a one-day Zoom deposition would cause her an "undue burden" is contrary to established law.  *See Jennings v. Fam. Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001).  Consequently, the Court shall hold Petitioner in contempt to her refusal to comply with the instant subpoena.

Concomitant with the Court's inherent authority to enter sanctions against parties held in contempt, Federal Rule 37 further empowers the Court to issue sanctions against "a nonparty deponent or his attorney or both of them who refuse[] to answer a question or questions at a deposition whose answers have to thereafter be compelled."  *Athridge v. Aetna Cas. and Sur. Co.*, 184 F.R.D. 200, 208 (D.D.C. 1998) (Facciola, M.J.) (citing Fed. R. Civ. P. 37(a)(4)(A)).  The Court "must" enter sanctions against a noncompliant deponent where the deponent's refusal to comply is not "substantially justified."  *Id.*; *Pao Taftneft v. Ukraine*, No. 17-cv-682, 2021 WL 5353024, at *9 (D.D.C. Oct. 18, 2021) (CKK).  "The central requirement of any Rule 37 sanction is that it be 'just.'"  *McNair v. District of Columbia*, 325 F.R.D. 20, 21 (D.D.C. 2018) (APM) (quoting *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996)).  Choosing an appropriate sanction "is bounded by the concept of proportionality between offense and sanction, and the Court must consider the resulting prejudice to the other party, any prejudice to the judicial system, and the need to deter similar misconduct in the future when doing so."  *Brown v. District of Columbia*, No. 10-cv-2250, 2021 WL 4798089, at *5 (D.D.C. Oct. 14, 2021) (PLF) (cleaned up).  Because Fraunhofer has submitted no affidavit or documentation reflecting the costs it has incurred in litigating this subpoena, the Court cannot yet determine what sanction is

appropriate.  As such, the Court shall defer ruling on sanctions until Fraunhofer submits documentation on fees and costs.

### III.    CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that Petitioner My-Chau Nguyen's [1] Motion to Quash Subpoena to Non-Party My-Chau Nguyen and for a Protective Order is **DENIED**; it is further

**ORDERED**, that Respondent Fraunhofer Gesellschaft Zur Fodering der angewandten Forschung E.v's [13] Cross-Motion to Compel Compliance with Subpoena is **GRANTED IN PART AND HELD IN ABEYANCE IN PART**; it is further

**ORDERED**, that Petitioner My-Chau Nguyen shall sit for a one-day Zoom deposition by **January 7, 2022**; it is further

**ORDERED**, that Respondent Fraunhofer Gesellschaft Zur Fodering der angewandten Forschung E.v shall, **on or before January 14, 2022**, submit to the Court documentation reflecting the fees and costs it incurred to move to compel Petitioner's compliance with the subpoena, up to and including the deposition itself.  Failure to submit this documentation may result in the denial of sanctions.

**SO ORDERED**.


Dated: December 7, 2021                                          /s/_____
                                                                **COLLEEN KOLLAR-KOTELLY**
                                                                United States District Judge